## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## MISSOULA DIVISION

_____

JEAN S. APPLEGATE,

                    Plaintiff,

           vs.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

                   Defendant.

CV 06-188-M-DWM-JCL

FINDINGS AND RECOMMENDATION
OF UNITED STATES
MAGISTRATE JUDGE

_____

Plaintiff Jean Applegate (Applegate) brings this action under 42 U.S.C. § 405(g) seeking judicial review of the decision of the Commissioner of Social Security (Commissioner) terminating her award of disability insurance benefits (DIB) under Title II of the Social Security Act (Act), 42 U.S.C. §§ 401-403.

The parties have filed cross-motions for summary judgment and the issues are fully briefed. Having considered the issues presented by the parties, together with the administrative record, the Court enters the following:

### RECOMMENDATION

**IT IS RECOMMENDED** that Applegate's Motion for Summary Judgment be **GRANTED**, the Commissioner's Motion for Summary Judgment be **DENIED**, the Commissioner's decision be **REVERSED**, and Applegate's benefits be reinstated accordingly.

PAGE 1

NOW, THEREFORE, IT IS ORDERED that the Clerk shall serve a copy of the Findings and Recommendation of the United States Magistrate upon the parties.  The parties are advised that pursuant to 28 U.S.C. § 636, any objections to these findings must be filed with the Clerk of Court and copies served on opposing counsel within ten (10) days after receipt hereof, or objection is waived.

DONE AND DATED this 10th day of October,  2007

        /s/ Jeremiah C. Lynch        
Jeremiah C. Lynch
United States Magistrate Judge

**RATIONALE**

## I.   BACKGROUND

Applegate brings this action challenging the Commissioner's decision terminating her disability insurance benefits. Applegate filed an application for disability insurance benefits on November 29, 2000, alleging a disability onset date of October 1, 2000.  Tr. 58-60; 252.  Following a hearing, an Administrative Law Judge (ALJ) issued a favorable decision, finding Applegate was disabled as of the alleged onset date primarily due to rheumatoid arthritis.  Tr. 254; 261.  The ALJ also found that she had tendonitis, mechanical low back pain, goiter, and fibrocystic breast disease, all of which constituted severe impairments.  Tr. 254.

In July 2004, the Social Security Administration (SSA)

PAGE 2

conducted a continuing disability review[1] and determined that
Applegate's medical condition had significantly improved, such
that she was no longer disabled.  Tr. 261-62.  As a result, the
SSA notified Applegate that it considered her no longer disabled
as of July 1, 2004, and informed her that her benefits would
terminate in September 2004.  Tr. 261.  Applegate appealed the
cessation of her benefits, and requested an administrative
hearing before an ALJ.  Tr. 302-03. After a hearing, the ALJ
issued a decision finding that Applegate's condition had improved
since the first ALJ's favorable decision in March 2002.  Tr. 17-
28.  The ALJ concluded that Applegate's disability ended as of
July 1, 2004, and her benefits had been properly terminated.  Tr.
17-28.  The Appeals Council later denied Applegate's request for
review, rendering the ALJ's decision the agency's final decision
for purposes of judicial review.  Tr. 7-10.

Applegate was 48 years old when she began receiving
disability benefits in October 2000, and 52 years old when her
benefits were terminated in July 2004.  Tr. 58.  She was 54 years
old at the time of the ALJ's decision.  Tr. 27.

## II.  STANDARD OF REVIEW

This Court's review is limited.  The Court may set aside the
Commissioner's decision only where the decision is not supported

---

[1] Under the Social Security Act, a claimant's eligibility for
benefits is subject to periodic review.  *See* 42 U.S.C. § 423(f); 20
C.F.R. § 404.1594 (2006).

PAGE 3

by substantial evidence or where the decision is based on legal error.  *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005); *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Widmark v. Barnhart,* 454 F.3d 1063, 1070 (9th Cir. 2006).

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities."  *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).  This Court must uphold the Commissioner's findings "if supported by inferences reasonably drawn from the record." *Batson v. Commissioner of Social Security Administration*, 359 F.3d 1190, 1193 (9th Cir. 2004).  "[I]f evidence exists to support more than one rational interpretation," the Court "must defer to the Commissioner's decision."  *Batson*, 359 F.3d at 1193 (*citing Morgan v. Commissioner*, 169 F.3d 595, 599 (9th Cir. 1999).  This Court "may not substitute its judgment for that of the Commissioner."  *Widmark*, 454 F.3d at 1070 (*quoting Edlund*, 253 F.3d at 1156).

## III. BURDEN OF PROOF

Where, as here, a claimant has received a favorable disability determination, the Commissioner can terminate benefits only if substantial evidence demonstrates medical improvement

PAGE 4

such that the claimant is able to engage in substantial gainful activity.  42 U.S.C. 423(f); 20 C.F.R. § 416.994(b); *Murray v. Heckler*, 722 F.2d 499, 500 (9th Cir. 1983).  The applicable regulations define medical improvement as "any decrease in the medical severity of your impairment(s) which was present at the time of the most recent favorable medical decision that you were disabled or continued to be disabled."  20 C.F.R. § 416.994(b)(1)(I).  "A determination that there has been a decrease in medical severity must be based on changes (improvement) in the symptoms, signs and/or laboratory findings associated with your impairment(s)."  20 C.F.R. § 404.1594(b)(1).

Accordingly, to determine whether Applegate's disability had ceased, the ALJ was required to compare the current medical severity of her impairments to the severity of those impairments at the last time the Commissioner found her disabled.  20 C.F.R. § 404.1594(c)(3)(v).  The most recent favorable medical decision, also known as the "comparison point decision," in this case was the ALJ's March 11, 2002 decision.  Tr. 18; 254; 261.  The ALJ was thus required to compare Applegate's condition at the time of the July 2004 continuing disability review with her condition in March 2002.

**IV.  DISCUSSION**

Adhering to the sequential evaluation process applicable in disability termination cases, the ALJ first found that Applegate

PAGE 5

had not engaged in substantial gainful activity through July 1, 2004, the date her disability ended.  Tr. 19; 20 C.F.R. § 404.1594(f)(1).  He then determined at step two that Applegate suffered from rheumatoid arthritis, hypertension, and obesity, but that those impairments did not meet or equal the severity of any impairment described in the Listing of Impairments.  Tr. 19; 20 C.F.R. § 404.1594(f)(2).  At step three, the ALJ found that medical improvement had occurred as of July 1, 2004.  Tr. 20; 20 C.F.R. § 404.1594(f)(3).  The ALJ next found that Applegate had the residual functional capacity to perform a full range of sedentary work as of July 1, 2004, and consequently concluded at step four that her medical improvement was related to her ability to work.  Tr. 21; 26; 20 C.F.R. § 404.1594(f)(4).  At step six,[2] the ALJ found that Applegate's impairments were severe as of July 1, 2004.  Tr. 26; 20 C.F.R. § 404.1594(f)(6).  Finally, the ALJ found at step seven that Applegate was no longer disabled as of July 1, 2004, because she was capable of returning to her past relevant work.  Tr. 27; 20 C.F.R. § 404.1594(f)(7).[3]

On appeal, Applegate argues the ALJ erred by finding at step three that her condition had medically improved, and correspondingly erred by finding that the improvement in her

---

[2] Because Applegate's medical improvement related to her ability to do work, the ALJ proceeded directly to the sixth step. 20 C.F.R. § 404.1594(f)(4).

[3] Having so concluded, the ALJ did not proceed to the eighth and final step.

condition related to her ability to do work.  She also argues the ALJ failed to cite sufficient reasons for rejecting certain medical opinions and for finding her testimony not entirely credible.

### A.  Medical Improvement

Applegate argues the ALJ erred in finding that her medical condition had improved since the date of her most recent favorable disability determination.  This Court agrees.

Contrary to the ALJ's conclusion, Applegate's medical records from March 2002 through July 2004 reflect that her condition essentially remained unchanged during this critical period.  For example, Applegate's treating rheumatologist reported in April 2002 that although she had only a minimal amount of synovitis, she was unable to maintain employment.  Tr. 417.  Applegate appeared well in July 2002, and displayed no active synovitis.  Tr. 415.  In January 2003, Applegate was suffering from recurrent infections and her doctor adjusted her medications accordingly.  Tr. 411.  Again, doctors found little active synovitis of her wrists or hands, and could make a complete fist.  Tr. 411.  Applegate's condition was much the same in May 2004, when she complained of morning stiffness, problems with her wrists and joints, but showed no synovitis at any of the affected joints.  Tr. 454.  These records and the many others that were before the ALJ reflect Applegate's ongoing struggle with recurring infections, multiple medication changes, and her

PAGE 7

consistent complaints of pain and stiffness with little or no synovitis.

Despite the overall consistency with which Applegate's arthritis presented itself during the two year period at issue, the ALJ found what he construed as evidence of medical improvement in a July 2004 report by examining orthopedist Dr. James Burton.  Tr. 20-21.  Specifically, the ALJ cited the fact that Dr. Burton found "no clinical signs of rheumatoid arthritis," or "evidence of synovitis, joint swelling, warmth or redness of any joints" as evidence that Applegate's condition had improved.  Tr. 21; 449.

As Applegate correctly maintains, however, the fact that Dr. Burton did not find evidence of synovitis, joint swelling, warmth, or redness of joints does not necessarily mean that her condition had improved.  Tr. 448-49.  To the contrary, the record reflects that her rheumatoid arthritis did not typically present with such findings, even at the time she was awarded benefits in 2002. Given that fact, the absence of such symptoms or findings in 2004 did not signify medical improvement.  Because Dr. Burton's findings do not represent a substantive departure from those present in the record at the time of the comparison point decision in 2002, the ALJ erred finding that they established medical improvement.

Also worth noting is the fact that a residual functional

capacity assessment form completed by a reviewing physician 2004
was entirely consistent with the one completed by a different
physician in 2001, except that the earlier assessment included
some postural and manipulative limitations.  Tr. 213-220; 476-81.
Interestingly neither the ALJ that awarded Applegate benefits nor
the ALJ that terminated her benefits accepted the limitations
noted on the forms, which indicated she was capable of a limited
range of light work.  Regardless, the forms are significant
because the restrictions set forth therein are virtually
identical, thereby indicating that her condition remained largely
the same during the intervening period.

     Review of the record also establishes that the ALJ erred by
citing the absence of x-ray findings as evidence of medical
improvement.  Tr. 571-72.  Although the ALJ did not discuss the
absence of x-ray findings in his decision, that he considered the
absence of such evidence is apparent from the discussion at the
hearing.  Tr. 571-72.  As Applegate notes, however, there was no
x-ray evidence of joint destruction in 2002 when she was awarded
disability benefits.  The ALJ thus erred to the extent he relied
on the absence of such x-ray evidence to support his finding that
Applegate's condition had improved.

     Finally, the ALJ erred by finding that her problems with
infections had largely resolved as of July 1, 2004.  The ALJ
essentially overlooked or minimized the many records documenting

PAGE 9

her multiple infections since 2002, and the impact those infections have on her ability to effectively treat her rheumatoid arthritis.  As treating rheumatologist Dr. Ann Corsi has explained, when Applegate gets an infection, the Humira used to treat her rheumatoid arthritis must "be discontinued through the duration of antibiotic use," during which time "her arthritis would become more active."  Tr. 522-23.  It is evident from the medical records, including Dr. Corsi's treatment notes, that Applegate's condition had not improved by 2004 because she continued to have infections, making it difficult to effectively treat her rheumatoid arthritis, as she did in the years leading up to the 2002 comparison point decision.

### B.  Treating Physicians

In a related argument, Applegate argues that the ALJ failed to cite sufficient reasons for rejecting medical source statements completed by treating physician Dr. Ann Corsi. Applegate is correct.

A treating physician's opinion is entitled to greater weight than that of an examining physician on the basis that he has a "greater opportunity to observe and know the patient."  *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995).  The treating physician's opinion is not, however, necessarily conclusive as to either a physical condition or the ultimate issue of disability. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).  The

PAGE 10

weight given a treating physician's opinion depends on whether it
is supported by sufficient medical data and is consistent with
other evidence in the records.  20 C.F.R. § 404.1527(d)(2).

The Commissioner may disregard the treating physician's
opinion whether or not that opinion is contradicted.  *Magallanes*,
881 F.2d at 751.  In discounting the controverted opinion of a
treating physician the ALJ must provide "'specific and legitimate
reasons' supported by substantial evidence in the record."
*Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (quoting
*Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995)).  To do so
the ALJ must set forth "a detailed and thorough summary of the
facts and conflicting clinical evidence, stating his
interpretation thereof, and making findings."  *Magallanes*, 881
F.2d at 751.  However, the ALJ may only reject the uncontradicted
opinion of a treating physician when the ALJ presents clear and
convincing reasons that are supported by substantial evidence in
the record.  *Reddick*, 157 F.3d at 725 (*quoting Lester*, 81 F.3d at
830); *Andrews*, 53 F.3d at 1041; *Magallanes*, 881 F.2d at 751.  A
medical opinion is considered uncontroverted if all the
underlying medical findings of claimant's physical impairments in
the record are similar.  *Sprague v. Bowen*, 812 F.2d 1226, 1230
(9th Cir. 1987).

Applegate first maintains the ALJ should have given more
weight to a letter written by Dr. Corsi in March 2006, and a

medical source statement she completed shortly thereafter.  Tr. 522-27.  The ALJ acknowledged both documents and recognized that Dr. Corsi was "the treating rheumatology specialist since May 2004," and stated that her "objective findings are not rejected." Tr. 23.  The ALJ nevertheless declined to place "great weight" on her "opinions to the extent that she felt [Applegate] was disabled and unable to work."  Tr. 23.  The ALJ primarily rejected Dr. Corsi's opinions on the stated basis that they were not supported by "her own treatment notes, examination findings by other sources including Dr. Langenderfer and Dr. Burton, and [Applegate's] own statements about her activities."  Tr. 23. Contrary to the ALJ's assessment, Dr. Corsi's treatment notes do indeed reflect Applegate's ongoing struggle to control her rheumatoid arthritis in the face of recurring infections.  Tr. 500-517.

With regard to Applegate's activities, the ALJ explained that while "Dr. Corsi indicated in the assessment form that [Applegate] could never perform any postural activities, even stooping," Applegate was capable of doing so as evidenced by "her own statements about her activities," which included "walking, exercising, swimming, shopping, driving, [and] doing housework at her own pace."  Tr. 23.  Any discrepancy between Dr. Corsi's opinion and Applegate's activities is negligible at best and an insufficient basis for rejecting the longtime treating

PAGE 12

physician's opinion.

**V.  Conclusion**

For all of the above reasons, the Court concludes that substantial evidence does not support the ALJ's determination that Applegate's condition had improved between the March 2002 decision and July 2004 continuing disability review.  The ALJ thus erred in terminating Applegate's benefits.   Having so concluded, this Court need not address Applegate argument that the ALJ failed to cite sufficient reasons for finding her testimony not entirely credible.  Accordingly, Applegate's motion for summary judgment should be granted, the Commissioner's motion should be denied, and the Commissioner's decision should be reversed.